**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERONICA GARAY, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-14-1332 |
| v. | (JUDGE CAPUTO) |
| OFFICER MICHAEL COLASARDO, et al., | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 19). Defendants Michael Colasardo *et al.* move to dismiss, in part, Plaintiff Veronica Garay's Amended Complaint (Doc. 18) for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Plaintiff Garay is the administratrix of the estate of her brother, Jonathan Garay. Plaintiff Garay alleges that the rights of Jonathan Garay were violated when he was shot by a Hazleton City Police Officer. She brings suit pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, the Pennsylvania Constitution, and pendent state tort law. Because the amended complaint fails to set forth claims of § 1985 conspiracy and failure to prevent actions taken under § 1985 (counts XI and XII), a claim of civil conspiracy (count VII) against Defendants Mayor Joe Yannuzzi, Police Chief Frank DeAndrea, and John/Jane Doe; claims of state constitutional violations, assault and battery, and trespass, false arrest, and illegal imprisonment (counts XIII, XIV and XV) for monetary damages; and state law conspiracy (count XVI) against Defendants City of Hazleton and Doe, Defendants' Motion to Dismiss (Doc. 19) will be *granted* with respect to these claims. Because the amended complaint states sufficient facts to establish all other challenged claims, Defendants' Motion to Dismiss will be *denied* with respect to these claims.

## I. Background

Plaintiff Veronica Garay ("Ms. Garay," "Plaintiff Garay") brings suit individually and as the administratrix of the estate of her brother, Jonathan Garay ("the decedent," "Mr. Garay"). The defendants are the City of Hazleton ("Hazleton"), Hazleton Police Officers Michael Colasardo and Scott Nicholas, Chief of Hazleton Police Frank DeAndrea, Mayor of Hazleton Joe Yannuzzi, and John/Jane Doe #1-X, member(s) of Hazleton law enforcement. All defendants are sued individually and in their official capacities.

### A. Factual Background

The facts as alleged in the Amended Complaint (Doc. 18) are as follows:

### 1. The Parties

Defendant City of Hazleton ("Hazleton," "City") is a municipal corporation and governmental entity within the Commonwealth of Pennsylvania. (*Id.* at ¶ 10.) It is empowered to establish, regulate, and control its police department in the enforcement of laws and ordinances within its jurisdiction, and for the purpose of protecting and preserving the persons, property and constitutional rights of individuals within its jurisdiction.

Defendants Officer Michael Colasardo and Officer Scott Nicholas are sworn officers of the Hazleton Police Department, and at all relevant times were serving in their official capacity. (Doc. 18, ¶ 5-6.) They were entrusted with power to enforce the law and to protect the constitutional rights of those they encountered. (*Id.*)

Defendant Frank DeAndrea was at all relevant times the Police Chief for the Hazleton Police department, and was responsible for the formulation and implementation of practices, policies, and procedures. (*Id.* at ¶ 7.) He is also responsible for discipline and assignment of officers, hiring and firing, and the daily operation, command, and control of the police department. (*Id.*) At all relevant times, he was acting within the scope of his duties and authority. (*Id.*) He supervised or controlled one or more of the other defendants herein. (*Id.*) Plaintiff avers that Defendant DeAndrea, along with Defendant Yannuzzi, are

the ultimate authority for staffing, promotions, discipline and operational functions of the police department, with the final decision-making authority of a policymaker. (*Id.*)

Defendant Joe Yannuzzi is the elected Mayor of Hazleton. (*Id.* at ¶ 8.) He directly supervises the police department and its members. (*Id.*) He oversees the selection of the supervisory personnel for the police department, who are, through him, responsible for the formulation and implementation of practices, policies, customs and procedures, as well as the day to day operation, command, and control of all segments of the police department. (*Id.*) Mayor Yannuzzi is responsible for promulgating and enforcing laws, rules and regulations concerning the police department. (*Id.*) At all relevant times, he was acting within the scope of his duties and authority, and supervised or controlled one or more of the defendants herein. (*Id.*) Yannuzzi exercises authority over the selection, staffing, retention, training, promotions, discipline and operational functions of the police department. (*Id.*)

Defendant(s) John/Jane Doe #1-X ("Doe") are law enforcement officers. Defendant(s) was/were at all relevant times serving in their official capacity as (a) sworn officer(s), and had the power to enforce city and state laws. (*Id.* at ¶ 9.)

**2. The Shooting**

On or about the night of October 4, 2013, into the early morning of October 5, the decedent, Jonathan Garay, was socializing with friends in Hazleton. (*Id.* at ¶ 11.) Mr. Garay, who is Latino, was nearby his home, which is located at 521 Alter Street in Hazleton, Pennsylvania. (*Id.* at ¶ 12.) At approximately 2:30 a.m. on October 5, 2013, a fight involving around 10-15 people occurred outside of the Capri Bar on Alter Street in Hazleton. (*Id.* at ¶ 13-14.) Mr. Garay was not one of the people involved in this fight. (*Id.* at ¶ 16.) This was told to Defendants Nicholas and Colasardo, though it is not clear at what point. (*Id.*) Hazleton Police were called in response to this fight. (*Id.* at ¶ 15.)

While the police arrived at Capri Bar, Mr. Garay walked on Alter Street toward his home at 521 Alter Street. (*Id.* at ¶ 17.) Mr. Garay and a friend turned off of Alter Street onto First Street, and entered the backyard of Mr. Garay's home, enclosed by a gated

fence. (*Id.* at ¶ 18.) Police were clearing the area on Alter Street near the fight. (*Id.* at ¶ 19.) No one requested that Mr. Garay or his friend remain on Alter Street. (*Id.*)

The fence surrounding Mr. Garay's backyard had thatching on it, so one could not see into the backyard from the street. (*Id.* at ¶ 20.) After Mr. Garay and his friend entered the backyard, he latched the gate behind him and proceeded to his back door. His friend walked to the opposite side of the yard. (*Id.* at ¶ 21.) Mr. Garay walked up his back steps, opened the screen door, placed his keys into the lock of his door, and tried to open it. (*Id.* at ¶ 22.)

Plaintiff alleges that at the same time, Defendant Nicholas entered Mr. Garay's backyard through the closed gate, without permission. (*Id.* at ¶ 23.) Defendant Nicholas approached Mr. Garay from behind, and assaulted him on the back porch and inside the doorway to Mr. Garay's home. (*Id.* at ¶ 27.) At approximately the same time, Defendant Colasardo entered Mr. Garay's backyard and drew and fired his weapon, hitting him twice, in the head and body. (*Id.* at ¶ 28-29.)

Plaintiff asserts that one of the bullets entered Mr. Garay's head on the left side and exited from the left lateral chin area, fracturing the decedent's left mandibular ramus. (*Id.* at ¶ 30-31.) The bullet traveled downward, slightly from left to right, with "essentially no change of direction from front to back or back to front." (*Id.* at ¶ 32.) No stippling or gunpowder residue from the bullet was found in the surrounding soft tissue or skin. (*Id.* at ¶ 33.) The other bullet entered Mr. Garay's right posterior flank, traveling right to left and slightly downward and slightly forward. (*Id.* at ¶ 34.) Mr. Garay was shot in the back. (*Id.* at ¶ 35.) The bullet was found in the soft tissue of decedent's left pelvis. (*Id.* at ¶ 36.)

Mr. Garay was taken to hospital, where he was admitted at 3:23 a.m. (*Id.*) He was pronounced dead at 3:35 a.m. on October 5, 2013. (*Id.* at ¶ 38.) Dr. Gary Ross, M.D. performed an autopsy of the decedent that morning. (*Id.* at ¶ 39.) After this autopsy, the Luzerne County Coroner ruled his death a homicide, with multiple gunshot wounds the cause of death. (*Id.* at ¶ 40-41.)

**3. After the Shooting**

After Mr. Garay was shot, he was lying on the floor of the kitchen of his home, bleeding heavily, when police and paramedics arrived. (*Id.* at ¶ 58.) Mr. Garay's family members were present while he was bleeding in the kitchen, and heard him speak prior to his death. (*Id.* at ¶ 59.) Immediately following the shooting, while Mr. Garay was on the kitchen floor, one of the defendant officers removed a firearm from Mr. Garay's waistband and threw it to the side. (*Id.* at ¶ 60.) Plaintiff argues that this shows that Mr. Garay did not remove his firearm from his waistband. (*Id.* at ¶ 61.) Mr. Garay had a valid license to carry a firearm. (*Id.* at ¶ 62.)

After the shooting, police officers kicked in the bedroom door of Mr. Garay's brother, who was asleep upstairs. (*Id.* at ¶ 65.) Officers woke him from sleep, put him on the ground, and used a taser on him. (*Id.*) All of Mr. Garay's family members were forcibly removed by the defendants and other law enforcement from the kitchen, and were not permitted to help Mr. Garay as he bled to death in the kitchen. (*Id.* at ¶ 63.) Plaintiff alleges that the occupants of Mr. Garay's home were "corralled" in the "family room," feet away from Mr. Garay. (*Id.* at ¶ 64.) Plaintiff asserts that at this time, police department members insulted the Garay family, and forced them remain in the living room as Mr. Garay bled heavily. (*Id.* at ¶ 68.) Plaintiff alleges that Hazleton Police Department members, including Defendants, had harassed members of the Garay Family prior to the shooting, and also did so following the shooting. (*Id.* at ¶ 69-70.)

Plaintiff maintains that this conduct is typical of the Hazleton Police Department's treatment of racial minorities. (*Id.* at ¶ 66.) Plaintiff alleges that Defendants Colasardo and Nicholas have "a history of violence and Constitutional violations that were known to their supervisors and Defendant City." (*Id.* at ¶ 71.) Plaintiff asserts that Colasardo and Nicholas were not disciplined for past acts, which amounted to condonation and encouragement from their supervisors and the City to continue to engage in constitutional violations. (*Id.*) Plaintiff alleges that further evidence of these unconstitutional acts was destroyed by Defendant(s) Doe. (*Id.* at ¶ 74.)

No discipline was issued by supervisors following the shooting of Garay, which Plaintiff asserts further demonstrates that the city and police supervisors condoned and encouraged such behavior. (*Id.* at ¶ 72.)

Plaintiff argues that the Police Department and the City provided no training to the defendants on appropriate entry onto private property, the appropriate use of force in given circumstances, the use of deadly force, or the safe handling of firearms. (*Id.* at ¶ 75-76.) Plaintiff alleges that many Hazleton police officers "routinely" use excessive force, and have been nominally disciplined, if at all. (*Id.* at ¶ 77.)

Plaintiff alleges that prior to the death of Mr. Garay, the police department had no written policies regarding the appropriate use of force in circumstances regularly encountered by law enforcement. (*Id.* at ¶ 78.) If such policies did exist, it was the department's common practice to ignore them. (*Id.*) Plaintiff asserts that there were repeated incidents of and complaints about excessive use of force by Hazleton police officers prior to this event, and despite this, no significant efforts were made to establish use of force standards or to ensure constitutional rights were not violated. (*Id.* at ¶ 79.) Plaintiff maintains that many of these incidents and complaints involved people of a racial minority. (*Id.* at ¶ 80.) Plaintiff argues that this shows a deliberate indifference to the rights of individuals.

Plaintiff asserts that the defendant supervisors, city administration, and the mayor ignored citizens' repeated complaints about officers' repeated violations of constitutional rights, and ignored these violations (*Id.* at ¶ 80.) Plaintiff alleges that they failed to adopt and enforce policies and procedures to end the culture of abuse and indifference to the rights and safety of others. (*Id.* at ¶ 89). Plaintiff maintains that Defendants encouraged the custom and practice of indifference to constitutional rights by: rewarding improper actions; failing to promulgate appropriate rules, regulations and policies; failing to enforce existing rules and regulations; failing to discipline illegal conduct; inappropriate hiring, training supervision and promotions; and reinforcing the culture of deliberate indifference. (*Id.* at ¶ 89.) Plaintiff asserts that the individual defendants assisted each other in

performing these actions, and lent their physical presence and authority in support of each other.  (*Id.* at ¶ 90.)

### 3. The Investigation of the Shooting

After Mr. Garay's death, the State Police and the Luzerne County District Attorney conducted an investigation into the shooting of Mr. Garay.  (*Id.* at ¶ 43.) On October 16, 2013, the Luzerne County District Attorney, Stefanie J. Salavantis, issued a report regarding the shooting. (*Id.* at ¶ 44.) Plaintiff notes that this was eleven (11) days after the shooting, and before the autopsy report was completed and issued. (*Id.*)  Salavantis stated that she issued the report after interviewing Defendants Nicholas and Colasardo.  (*Id.* at ¶ 46.)

Plaintiff disputes the version of events as described in this report–particularly, that Mr. Garay was pointing a gun at Defendant Colasardo when he was shot, and that he was shot in his front, outside, and then stumbled back into the doorway.  (*Id.* at ¶ 46-51.) Plaintiff argues that the wounds suggest that the decedent was not facing Colasardo when he was shot; rather, he was shot in the back while trying to enter–or already inside–his home.  (*Id.* at ¶ 52.)  Plaintiff asserts that the decedent did not point a gun at Defendant Colasardo, and it is impossible that he did so, based on the trajectory of the bullets and the fact that he was shot in the back.  (*Id.* at ¶ 54.)  Plaintiff maintains that the absence of gunpowder residue, blackening, and stippling surrounding the two sites where the bullets entered the decedent's body indicate that the bullets were fired from a distance beyond 24-36 inches, which contradicts the report.  (*Id.* at ¶ 55.)  Plaintiff also argues that the porch where the decedent was shot was very small, too small for a struggle between Defendants Colasardo and Nicholas and the decedent (as stated in the report) to have occurred, and not leave gunpowder residue, blackening, and stippling at the bullets' entry points.  (*Id.* at ¶ 56-57.)  Plaintiff maintains that the report contradicts the autopsy report.

Plaintiff asserts that the decedent was only trying to gain entry into his home, and did not physically resist, threaten, or assault the Defendants, and was not a threat to the safety of himself or others.  (*Id.* at ¶ 84-85.)

**B. Procedural Background**

Plaintiff Veronica Garay instituted this action by filing a Complaint (Doc. 1) on July 11, 2014. After Defendant filed two Motions to Dismiss (Docs. 12 and 16), which were later terminated, Plaintiff filed an amended complaint on August 18, 2014 (Doc. 18).

In her Complaint, Plaintiff Garay asserts the following eighteen (18) counts:

Counts I-IV, VI, VII, IX: unlawful entry, unlawful seizure, excessive force and physical brutality, false imprisonment, failure to intervene, civil conspiracy, and fourteenth amendment equal protection, respectively, pursuant to 42 U.S.C. § 1983, against all individual defendants.

Count V: Supervisory-Policymaker Liability, pursuant to 42 U.S.C. § 1983, against Defendants Yannuzzi, DeAndrea and Doe.

Count VIII: Municipal Liability, pursuant to 42 U.S.C. § 1983, against the City of Hazleton.

Count X: Denial of Equal Rights Under the Law, in violation of 42 U.S.C. § 1981, against all defendants.

Count XI: Conspiracy to Interfere with Civil Rights, in violation of 42 U.S.C. § 1985, against all defendants.

Count XII: 42 U.S.C. § 1985 - § 1986, Failure to Prevent Actions Taken Under § 1985, against all defendants.

Count XIII: State constitutional violations (Article I, Section 8), against all individual defendants.

Counts XIV -XVI: assault and battery; trespass, false arrest and illegal imprisonment; and civil conspiracy, respectively, in violation of state law, against Defendants Colasardo, Nicholas, City, and Doe.

Counts XVII and XVIII: Wrongful Death and a survival action, respectively, in violation of state law, against all defendants.

On August 25, 2014, Defendants filed this partial Motion to Dismiss for failure to state a claim pursuant to FRCP 12(b)(6) (Doc. 19) and an accompanying Brief (Doc. 20).

Defendants seek to dismiss counts I, II, III, IV, and VI against Defendants Yannuzzi and DeAndrea; and counts XIV and XV against Defendant City. Defendants seek dismissal in entirety of counts V, VII, IX, X, XI, XII, XIII, and XVI.

On September 11, 2014, Plaintiff Garay filed a Brief in Opposition to Defendant's Motion (Doc. 23). This matter is fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering such a motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. See *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,(2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory

allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n. 13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**III. Discussion**

Defendants assert that Plaintiff's Complaint fails to state a claim upon which relief can be granted with respect to fifteen of the eighteen counts, at least in part. Taking all facts in a light most favorable to the plaintiff, and resolving all possible inferences in her favor, I examine whether she has alleged sufficient facts to plausibly state a claim. I will address the counts in the order set out by Defendants in the brief accompanying their Motion to Dismiss (Doc. 20).

**A. Counts I, II, II, IV, V, VI**

Defendants seek dismissal as to Defendants Yannuzzi and DeAndrea of counts I, II, II, IV and VI: unlawful entry, unlawful seizure, excessive force and physical brutality, false imprisonment, failure to intervene, civil conspiracy, and fourteenth amendment equal protection, respectively, in violation of U.S.C. § 1983. Defendants seek dismissal in the entirety of count V, which alleges supervisory liability-policymaker liability pursuant to § 1983 against defendants Yannuzzi, DeAndrea, and Does.

Defendant Yannuzzi is the mayor of Hazleton. Defendant DeAndrea is the police chief. Plaintiff asserts that Yannuzzi and DeAndrea are liable for the above violations under a theory of municipal liability, and policymaker and supervisory liability (as set out in *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978)).

Defendants argue that the plaintiff cannot allege that Yannuzzi and DeAndrea violated § 1983 under a theory of municipal, policymaker, or supervisory liability. They argue that "as there is no claim that either of these defendants set foot on the Garay property, seized or used any force whatsoever against decedent, these claims should be dismissed." (Doc. 20, 6.) Defendants do not argue that Plaintiff has failed to state a claim in counts I-IV and VI against Officers Colasardo and Michael, only that she has not stated a claim against Mayor Yannuzzi and Police Chief DeAndrea.

Municipalities and their employees cannot be held liable under § 1983 pursuant to a theory of *respondeat superior. Monell,* 436 U.S. 658. Under *Monell*, however, "[l]ocal

governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Pursuant to *Monell*, a failure to train police officers can cause a municipality to be liable under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[W]hile claims . . . alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation [a plaintiff] suffered are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392.

> [I]n light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id*. at 390.

Plaintiff alleges that Defendants Yannuzzi and DeAndrea are liable for the failure of the police department and the city to train police on the proper ways to enter property, conduct a seizure, use force, conduct arrests, and intervene. All of these are common situations that police officers face, and are all situations in which violations of citizens' constitutional rights are likely to occur. Furthermore, many citizens had made complaints to the city and the department about the conduct of police officers in these situations prior to the event at issue here. Plaintiff asserts that the failure to train police officers to respect the constitutional rights of citizens in situations that police officers very frequently face, and the decision to ignore complaints about their practices, amounts to deliberate indifference.

Taking all of the Plaintiff's factual assertions as true, and resolving all inferences in her favor, she has stated a claim for which relief can be granted with respect to Yannuzzi and DeAndrea. In *Monell,* the Supreme Court made clear that officials may be held liable,

and sued, in such suits:

> Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name.

*Monell*, 436 U.S. at 691 (1978).

Thus, in asserting that these claims against Yannuzzi and DeAndrea should be dismissed merely because they did not personally physically participate in the alleged constitutional violations, Defendants have not shown that the claims should be dismissed, and the motion will be denied.

**B. Counts XIV and XV**

Defendants seek dismissal for failure to state a claim of counts XIV and XV against Defendant City.  Count XIV asserts a state law tort claim for assault and battery.  Count XV asserts state law claims of trespass, false arrest and illegal imprisonment.  Both counts are against Officers Colasardo and Nicholas, the Doe defendants, and the City.  Defendants argue that the City cannot be liable for the torts of its employees.  Plaintiff concedes that she may not request monetary damages from the city for these counts; however, she may maintain a request for injunctive relief.  (Doc. 23, 16.)

Under the Pennsylvania Political Subdivision Tort Claims Act (PSTCA), local agencies are immune from state law tort claims (with some exceptions not applicable here). 42 Pa. Cons. Stat. §§ 8541 *et seq*.  The City of Hazleton qualifies as a local agency under the PSTCA. See *id*., § 8501.  Therefore, it has immunity under the statute.  However, Plaintiff is correct that the statute only grants governmental immunity against actions for damages.  Thus, Plaintiff may proceed to the extent that her claims ask for injunctive relief.

**C. Count VII**

Defendants seek dismissal in entirety of count VII, which alleges civil conspiracy pursuant to § 1983 against all individual defendants. In the alternative, Defendants seek dismissal as to Defendants Yannuzzi and DeAndrea only. Defendants argue that this allegation "fails for lack of specificity." (Doc. 20, 10.)

To state a claim of civil conspiracy in violation of § 1983, "a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Coulter v. Ramsden*, 510 F. App'x 100, 103 (3d Cir. 2013) (citing *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)). "Conspiracy requires a 'meeting of the minds.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (further citations omitted)). "This holding remains good law following *Twombly* and *Iqbal*, which, in the conspiracy context, require 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co.*, 615 F.3d at 178 (quoting *Twombly*, 550 U.S. at 556.)

With respect to Officers Colasardo and Nicholas, Plaintiff has asserted sufficient facts to state a plausible claim of conspiracy with enough specificity. The officers appear to have agreed to coordinate their actions: both entered decedent's fenced-in property at the same time, and both assaulted the decedent. Plaintiff alleges that both officers unlawfully entered the Garay home, insulted Garay family members, did not provide aid as the decedent lay dying, did not allow family members to provide aid, and forced family members to remain in the living area.

With respect to the other defendants–Yannuzzi, DeAndrea and Doe–Plaintiff has not stated sufficient facts to state a claim for conspiracy. Plaintiff does not allege any plausible grounds to infer an agreement, as required by *Twombly*. Plaintiff alleges that Mayor Yannuzzi and Police Chief DeAndrea created policies and a culture that were indifferent to constitutional rights, and failed to adequately train officers, which encouraged the violation of civil rights and led to Mr. Garay's death. Plaintiff does not allege that they reached an

agreement to cause the death of Mr. Garay or the specific events that took place at the Garay home the night of Mr. Garay's death. Plaintiff has not stated any specific facts from which one could draw an inference that Defendant(s) Doe acted in agreement with the other parties, beyond conclusory or vague statements.

### D. Counts IX, X

Defendants seek dismissal of count IX, which is brought against all individual defendants. In their motion, Defendants state that count IX is brought pursuant to the substantive due process protections of the fourteenth amendment. Defendants argue that the count should be dismissed because it is duplicative of other due process counts. However, count IX is brought pursuant to the equal protection clause of t he fourteenth amendment. Thus, the motion to dismiss this count will be denied.

Similarly, Defendants seek dismissal in entirety of count X. Defendants write in their motion to dismiss that it is brought pursuant to the fourteenth amendment of the constitution and 42 U.S.C. § 1983. (Doc. 20, 13.) However, Plaintiff brings this claim pursuant to 42 U.S.C. § 1981, alleging denial of equal rights under the law. (Doc. 18, ¶ 226-241.) Because Defendants' argument in their Motion to Dismiss is directed at the incorrect section of the code, they have not shown that Plaintiff has violated FRCP12(b)(6), and the motion to dismiss this count will be denied.

### E. Counts XI, XII

Defendants seek dismissal of count XI, which alleges conspiracy to interfere with civil rights pursuant to § 1985 against all defendants. Under § 1985(3), it is illegal to conspire for the purpose of depriving any person of the equal protection or rights of the law.

To state a claim under § 1985(3), a plaintiff must allege:

(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997), *see also Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).

As discussed above in section (C), Plaintiff has stated sufficient facts in her complaint to establish that a conspiracy existed between Officers Colasardo and Nicholas. Furthermore, Plaintiff has shown an act in furtherance of this conspiracy, and an injury and deprivation of rights. Thus, the question is whether Plaintiff has stated sufficient facts to show that the agreement to deprive the decedent of his rights was motivated by racially discriminatory animus. Plaintiff has not demonstrated any facts that show that Officers Colasardo and Nicholas were motivated by racial animus.

Plaintiff states that it was "customary" for Hazleton officers to engage in "Constitutional deprivations directed at a targeted member of the unprotected Latino/Hispanic community." (Doc. 18, ¶ 249.) However, Plaintiff does not tie this into the incidents surrounding Mr. Garay's death.

Plaintiff does not point to any statements or actions on the part of the officers to indicate that their actions on the night in questions were motivated by racial animus. The allegations in the complaint are too vague to draw an inference that the words demonstrate racial animus. For example, the Complaint states that the "racially based discriminatory animus" was "evidenced by their own words spoken contemporaneously with the deprivation of Decedent's, an Hispanic/Latino, Constitutional rights." (*Id.* at ¶ 254.) At no point in the complaint does Plaintiff offer a description or approximation of what these words were. Plaintiff asserts that members of law enforcement insulted and harassed members of the Garay Family prior to the incident, and immediately following the shooting (*Id*. at ¶ 68-70.) However, Plaintiff does not assert that the insults or harassment were of a racial nature or racially motivated. Thus, count XI will be dismissed.

Defendants also seek dismissal of count XII, which alleges failure to prevent actions taken under § 1985 against all defendants. Because I do not find a properly alleged violation of § 1985 as stated in count XI, I do not find that Plaintiff has properly stated a claim for neglecting to prevent a violation of § 1985. Count XII will be dismissed.

**F. Count XIII**

Defendants seek dismissal of count XIII, which alleges violations of Pennsylvania Constitution Article I, Section 8 against all individual defendants. Defendants correctly argue that Plaintiff may not request monetary damages for violations of the Pennsylvania Constitution. (Doc. 20, 18). "No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." *Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) (citing *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. 2006)).

However, the United States Court of Appeals for the Third Circuit has established that: "[a]lthough monetary relief is barred for claims under the Pennsylvania Constitution, equitable remedies are available." *Pocono Mtn. Charter Sch.*, 442 F. App'x at 688 (citing *Moeller v. Bradford Cnty.*, 444 F. Supp. 2d 316, 320–21 (M.D. Pa. 2006) ("[I]t is well settled that individual plaintiffs may bring suit for injunctive relief under the Pennsylvania Constitution")). Plaintiff may proceed with her claim under the Pennsylvania Constitution for equitable relief.

**G. Count XVI**

Defendants seek dismissal of count XVI, which alleges a state law civil conspiracy claim against Defendants Colasardo, Nicholas, City, and Does. In order to sufficiently state a claim of civil conspiracy under Pennsylvania state law:

> 'It must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.' Proof of malice, i.e., an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification. Furthermore, a conspiracy is not actionable until 'some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results.'

*Grose v. Procter & Gamble Paper Prods.*, Pa. Super. 8, ¶ 7, 866 A.2d 437, 440-41 (2005) (internal citations omitted) (citing *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (1992) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211 (1979))).

17

Taking as true all facts averred by the Plaintiff, and resolving all inferences in her favor, Plaintiff has stated sufficient facts to allege a conspiracy under state law against Defendants Colasardo and Nicholas.  As discussed above in section (C), Plaintiff has stated enough facts to show that Colasardo and Nicholas agreed to coordinate their acts to violate the constitutional rights of the decedent, and an overt act was taken, resulting in damage.  Again, however, Plaintiff has not stated any specific facts from which one could draw an inference that Defendant(s) Doe destroyed documents pertaining to this event, beyond conclusory statements.  Furthermore, Plaintiff's allegations against the City all center on policies and practices, and Plaintiff does not allege any agreement involving the City.  Thus, this count will be dismissed against Defendants City and Doe, and permitted to proceed against Defendants Colasardo and Nicholas.

## IV. Conclusion

For the above reasons, Defendants' Motion to Dismiss (Doc. 19) will be granted in part and denied in part.  An appropriate order follows.

January 30, 2015　　　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge