**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERONICA GARAY,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICER MICHAEL COLASARDO, et al.*,*<br><br>    Defendants. | CIVIL ACTION NO. 3:CV-14-1332<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is Defendants' second Partial Motion to Dismiss (Doc. 28). Defendants move to dismiss, in part, Plaintiff Veronica Garay's Second Amended Complaint (Doc. 27) for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Plaintiff Garay is the administratrix of the estate of her brother, Jonathan Garay. Plaintiff alleges that the rights of Jonathan Garay were violated when he was shot by a Hazleton City Police Officer and died. Defendants are the City of Hazleton, Officer Michael Colasardo, Officer Scott Nicholas, Hazleton Police Chief Frank DeAndrea, Hazleton Mayor Joe Yannuzzi, and Law Enforcement John Does #1-X. Defendants move to dismiss Count VI (42 U.S.C. § 1983 failure to intervene) as to Defendants Yannuzzi and DeAndrea, Count X (42 U.S.C. § 1981 equal rights) Count XI (42 U.S.C. § 1985 conspiracy), Count XII (42 U.S.C. §§ 1985-1986 equal protection) and Count XVI (state law conspiracy).

Because the Second Amended Complaint sets forth sufficient facts to plausibly state claims of failure to intervene under 42 U.S.C. § 1983, denial of equal rights under 42 U.S.C. § 1981, conspiracy under 42 U.S.C. § 1985, failure to prevent actions under 42 U.S.C. §§ 1985-1986, and state law conspiracy, Defendants' Motion to Dismiss (Doc. 28) will be *denied.*

**I. Background**

Plaintiff Veronica Garay ("Ms. Garay," "Plaintiff Garay") brings suit individually and as the administratrix of the estate of her brother, Jonathan Garay ("the decedent," "Mr. Garay"). The defendants are the City of Hazleton ("Hazleton"), Hazleton Police Officers Michael Colasardo and Scott Nicholas, Chief of Hazleton Police Frank DeAndrea, Mayor of Hazleton Joe Yannuzzi, and John/Jane Doe #1-X, member(s) of Hazleton law enforcement. All defendants are sued individually and in their official capacities.

**A. Factual Background**

The facts as alleged in the Amended Complaint (Doc. 27) are as follows:

**1. The Parties**

Defendant City of Hazleton ("Hazleton," "City") is a municipal corporation and governmental entity within the Commonwealth of Pennsylvania. (*Id.* at ¶ 10.) It is empowered to establish, regulate, and control its police department in the enforcement of laws and ordinances within its jurisdiction, and for the purpose of protecting and preserving the persons, property and constitutional rights of individuals within its jurisdiction. (*Id.*)

Defendants Officer Michael Colasardo and Officer Scott Nicholas are sworn officers of the Hazleton Police Department, and at all relevant times were serving in their official capacity. (*Id*. at ¶¶ 5-6.) They were entrusted with power to enforce the law and to protect the constitutional rights of those they encountered. (*Id.*) Officers Colasardo and Nicholas are Caucasian. (*Id.* at ¶ 248a.)

Defendant Frank DeAndrea was at all relevant times the Police Chief for the Hazleton Police Department, and was responsible for the formulation and implementation of practices, policies, and procedures. (*Id.* at ¶ 7.) He is also responsible for discipline and assignment of officers, hiring and firing, and the daily operation, command, and control of the police department. (*Id*.) At all relevant times, he was acting within the scope of his duties and authority. (*Id.*) He supervised or controlled one or more of the other defendants herein. (*Id.*) Plaintiff avers that Defendant DeAndrea, along with Defendant Yannuzzi, are the ultimate

authority for staffing, promotions, discipline and operational functions of the police department, with the final decision-making authority of a policymaker.  (*Id.*)

Defendant Joe Yannuzzi was at all relevant times the elected Mayor of Hazleton.  (*Id.* at ¶ 8.)  He directly supervises the police department and its members.  (*Id.*)  He oversees the selection of the supervisory personnel for the police department, who are, through him, responsible for the formulation and implementation of practices, policies, customs and procedures, as well as the day to day operation, command, and control of all segments of the police department.  (*Id.*)  Yannuzzi is responsible for promulgating and enforcing laws, rules and regulations concerning the police department.  (*Id.*)  At all relevant times, he was acting within the scope of his duties and authority, and supervised or controlled one or more of the defendants.  (*Id.*)  Yannuzzi exercises authority over the selection, staffing, retention, training, promotions, discipline and operational functions of the police department.  (*Id.*)

Defendant(s) John/Jane Doe # 1-X ("Doe") are law enforcement officers. Defendant(s) was/were at all relevant times serving in their official capacity as (a) sworn officer(s), and had the power to enforce city and state laws.  (*Id.* at ¶ 9.)

**2. Prior to the Shooting**

Plaintiff asserts that the Hazleton Police Department and its officers had a history, culture, custom, and practice of discriminating against members of the latino community. (*Id.* at ¶ 246.)  Plaintiff alleges that Defendants knew the Garay family, knew that they were Latino, and knew where they lived.  (*Id.* at ¶248f.)  Plaintiff contends that prior to the night of October 4, 2013, Defendant Officer Nicholas had interacted with the decedent and members of his family.  (*Id.,* at ¶ 248b.)  Specifically, Defendant Nicholas had used racial slurs to Plaintiff's husband, and after Plaintiff's husband was vindicated in a court proceeding, Defendant Nicholas told him "don't worry, I'm going to catch you on something bigger," and again referred to him using a curse word and a racial slur.  (*Id.*)

Additionally, Defendant Nicholas had called Plaintiff and Decedent's family "spics," and told them to "go back to where you came from."  (*Id.* at ¶ 248c.)  He also told them that

3

"you are ruining our town." (*Id.*)

Plaintiff maintains that this is typical of the Hazleton Police Department's treatment of racial minorities. (*Id.* at ¶ 66.) Plaintiff alleges that Defendants Colasardo and Nicholas have "a history of violence and Constitutional violations that were known to their supervisors and Defendant City." (*Id.* at ¶ 71.) Plaintiff asserts that Colasardo and Nicholas were not disciplined for past acts, which amounted to condonation and encouragement from their supervisors and the City to continue to engage in constitutional violations. (*Id.*) Plaintiff alleges that further evidence of these unconstitutional acts was destroyed by Defendant(s) Doe. (*Id.* at ¶ 74.)

**3. The Shooting**

On or about the night of October 4, 2013, into the early morning of October 5, the decedent, Jonathan Garay, was socializing with friends in Hazleton. (*Id.* at ¶ 11.) Mr. Garay, who is Latino, was nearby his home, which is located at 521 Alter Street in Hazleton, Pennsylvania. (*Id.* at ¶ 12.) At approximately 2:30 a.m. on October 5, 2013, a fight involving around 10-15 people occurred outside of the Capri Bar on Alter Street in Hazleton. (*Id.* at ¶¶ 13-14.) Mr. Garay was not involved in this fight. (*Id.* at ¶ 16.) This was told to Defendants Nicholas and Colasardo, though it is not clear at what point. (*Id.*) Hazleton Police were called in response to this fight. (*Id.* at ¶ 15.)

While the police arrived at Capri Bar, Mr. Garay walked on Alter Street toward his home at 521 Alter Street. (*Id.* at ¶ 17.) Mr. Garay and a friend turned off of Alter Street onto First Street, and entered the backyard of Mr. Garay's home, enclosed by a gated fence. (*Id.* at ¶ 18.) Police were clearing the area on Alter Street near the fight. (*Id.* at ¶ 19.) No one requested that Mr. Garay or his friend remain on Alter Street. (*Id.*)

The fence surrounding Mr. Garay's backyard had thatching on it, so one could not see into the backyard from the street. (*Id.* at ¶ 20.) After Mr. Garay and his friend entered the backyard, he latched the gate behind him and proceeded to his back door. His friend walked to the opposite side of the yard. (*Id.* at ¶ 21.) Mr. Garay walked up his back steps, opened

4

the screen door, placed his keys into the lock of his door, and started to open it.  (*Id.* at ¶ 22.)

Plaintiff alleges that at the same time, Defendant Nicholas entered Mr. Garay's backyard through the closed gate, without permission.  (*Id.* at ¶ 23.)  Defendant Nicholas approached Mr. Garay from behind, and assaulted him on the back porch and inside the doorway to Mr. Garay's home.  (*Id.* at ¶ 27.)  At approximately the same time, Defendant Colasardo entered Mr. Garay's backyard and drew and fired his weapon, hitting him twice, in the head and body.  (*Id.* at ¶¶ 28-29.)

Plaintiff asserts that one of the bullets entered Mr. Garay's head on the left side and exited from the left lateral chin area, fracturing the decedent's left mandibular ramus.  (*Id.* at ¶¶ 30-31.)  The bullet traveled downward, slightly from left to right, with "essentially no change of direction from front to back or back to front."  (*Id.* at ¶ 32.)  No stippling or gunpowder residue from the bullet was found in the surrounding soft tissue or skin.  (*Id.* at ¶ 33.)  The other bullet entered Mr. Garay's right posterior flank, traveling right to left and slightly downward and slightly forward.  (*Id.* at ¶ 34.)  Mr. Garay was shot in the back.  (*Id.* at ¶ 35.)  The bullet was found in the soft tissue of decedent's left pelvis.  (*Id.* at ¶ 36.)

Mr. Garay was taken to hospital, where he was admitted at 3:23 a.m.  (*Id.*)  He was pronounced dead at 3:35 a.m. on October 5, 2013.  (*Id.* at ¶ 38.)  Dr. Gary Ross, M.D. performed an autopsy of the decedent that morning.  (*Id.* at ¶ 39.)  After this autopsy, the Luzerne County Coroner ruled his death a homicide, with multiple gunshot wounds the cause of death.  (*Id.* at ¶¶ 40-41.)

**4. After the Shooting**

After Mr. Garay was shot, he was lying on the floor of the kitchen of his home, bleeding heavily, when police and paramedics arrived.  (*Id.* at ¶ 58.)  Mr. Garay's family members were present while he was bleeding in the kitchen, and heard him speak prior to his death.  (*Id.* at ¶ 59.)  Immediately following the shooting, while Mr. Garay was on the kitchen floor, one of the defendant officers removed a firearm from Mr. Garay's waistband and threw it to the side.  (*Id.* at ¶ 60.)  Plaintiff argues that this shows that Mr. Garay did not

5

remove his firearm from his waistband.  (*Id.* at ¶ 61.)  Mr. Garay had a valid license to carry a firearm.  (*Id.* at ¶ 62.)

After the shooting, officers kicked in the bedroom door of Mr. Garay's brother, who was asleep upstairs.  (*Id.* at ¶ 65.)  Officers woke him from sleep, put him on the ground, and used a taser on him.  (*Id.*)  All of Mr. Garay's family members were forcibly removed by the defendants and other law enforcement from the kitchen, and were not permitted to help Mr. Garay as he bled to death in the kitchen.  (*Id.* at ¶ 63.)  Plaintiff alleges that the occupants of Mr. Garay's home were "corralled" in the "family room," feet away from Mr. Garay.  (*Id.* at ¶ 64.)  Plaintiff asserts that at this time, police department members insulted the Garay family, and forced them remain in the living room as Mr. Garay bled heavily.  (*Id.* at ¶ 68.)

Plaintiff alleges that Hazleton Police Department members, including Defendants, had harassed members of the Garay Family prior to the shooting, and also did so following the shooting.  (*Id.* at ¶¶ 69-70.)  Plaintiff asserts that the day of the shooting, Defendant Nicholas shouted at Decedent's mother to "shut the fuck up you immigrant" and then physically assaulted her.  (*Id.* at ¶ 248d.)  While clearing the house, Defendant Colasardo shouted at Decedent's sisters and young children to "go the fuck downstairs before I shoot you, you fucking immigrants," and to "shut the fuck up before I shoot you."  (*Id.* at ¶ 248e.)

No discipline was issued by supervisors following the shooting of Garay, which Plaintiff asserts further demonstrates that the city and police supervisors condoned and encouraged such behavior.  (*Id.* at ¶ 72.)

Plaintiff argues that the Police Department and the City provided no training to the defendants on appropriate entry onto private property, the appropriate use of force in given circumstances, the use of deadly force, or the safe handling of firearms.  (*Id.* at ¶¶ 75-76.)  Plaintiff alleges that many Hazleton police officers "routinely" use excessive force, and have been nominally disciplined, if at all.  (*Id.* at ¶ 77.)

Plaintiff alleges that prior to the death of Mr. Garay, the police department had no written policies regarding the appropriate use of force in circumstances regularly encountered by law enforcement.  (*Id.* at ¶ 78.)  If such policies did exist, it was the common

practice to ignore them. (*Id.*) Plaintiff asserts that there were repeated incidents of and complaints about excessive use of force by Hazleton police officers prior to this event, and despite this, no significant efforts were made to establish use of force standards or to ensure constitutional rights were not violated. (*Id.* at ¶ 79.) Plaintiff maintains that many of these incidents and complaints involved people of a racial minority. (*Id.* at ¶ 80.) Plaintiff argues that this shows a deliberate indifference to the rights of individuals.

Plaintiff asserts that the defendant supervisors, city administration, and the mayor ignored citizens' repeated complaints about officers' repeated violations of constitutional rights, and ignored these violations (*Id.* at ¶ 80.) Plaintiff alleges that they failed to adopt and enforce policies and procedures to end the culture of abuse and indifference to the rights and safety of others. (*Id.* at ¶ 89). Plaintiff maintains that Defendants encouraged the custom and practice of indifference to constitutional rights by: rewarding improper actions; failing to promulgate appropriate rules, regulations and policies; failing to enforce existing rules and regulations; failing to discipline illegal conduct; inappropriate hiring, training supervision and promotions; and reinforcing the culture of deliberate indifference. (*Id.* at ¶ 89.) Plaintiff asserts that the individual defendants assisted each other in performing these actions, and lent their physical presence and authority in support of each other. (*Id.* at ¶ 90.)

**5. The Investigation of the Shooting**

After Mr. Garay's death, the State Police and the Luzerne County District Attorney conducted an investigation into the shooting of Mr. Garay. (*Id.* at ¶ 43.) On October 16, 2013, Luzerne County District Attorney Stefanie J. Salavantis issued a report on the shooting. (*Id.* at ¶ 44.) Plaintiff notes that this was eleven (11) days after the shooting, and before the autopsy report was completed and issued. (*Id.*) Salavantis stated that she issued the report after interviewing Defendants Nicholas and Colasardo. (*Id.* at ¶ 46.)

Plaintiff disputes the version of events as described in this report–particularly, that Mr. Garay was pointing a gun at Defendant Colasardo when he was shot, and that he was shot in his front, outside, and then stumbled back into the doorway. (*Id.* at ¶¶ 46-51.) Plaintiff

7

argues that the wounds suggest that the decedent was not facing Colasardo when he was shot; rather, he was shot in the back while trying to enter–or already inside–his home.  (*Id.* at ¶ 52.)  Plaintiff asserts that the decedent did not point a gun at Defendant Colasardo, and it is impossible that he did so, based on the trajectory of the bullets and the fact that he was shot in the back.  (*Id.* at ¶ 54.)  Plaintiff maintains that the absence of gunpowder residue, blackening, and stippling surrounding the two sites where the bullets entered the decedent's body indicate that the bullets were fired from a distance beyond 24-36 inches, which contradicts the report.  (*Id.* at ¶ 55.)  Plaintiff also argues that the porch where the decedent was shot was very small, too small for a struggle between Defendants Colasardo and Nicholas and the decedent (as stated in the report) to have occurred, and not leave gunpowder residue, blackening, and stippling at the bullets' entry points.  (*Id.* at ¶¶ 56-57.) Plaintiff maintains that the District Attorney's report contradicts the autopsy report.

Plaintiff asserts that the decedent was trying to gain entry into his home, and did not physically resist, threaten, or assault the Defendants, and was not a threat to the safety of himself or others.  (*Id.* at ¶¶ 84-85.)

**B. Procedural Background**

Plaintiff Veronica Garay instituted this action by filing a Complaint (Doc. 1) on July 11, 2014.  After Defendant filed two Motions to Dismiss (Docs. 12 and 16), later terminated, Plaintiff filed an amended complaint on August 18, 2014 (Doc. 18).  On August 25, 2014, Defendants filed a Partial Motion to Dismiss (Doc. 19), which I granted in part and denied in part on January 30, 2015 (Doc. 25). I granted Plaintiff thirty (30) days leave to amend her complaint with respect to the claims that I had dismissed.

On March 2, 2015, Plaintiff filed an Amended Complaint (Doc. 27).  Plaintiff asserts the following eighteen (18) counts:

Counts I-IV: unlawful entry (Count I), unlawful seizure (Count II), excessive force and physical brutality (Count III) and false imprisonment (Count IV), all under 42 U.S.C. § 1983 ("§ 1983"), against all individual defendants.

Count V: supervisory/policymaker liability under § 1983 against Defendants Yannuzzi, DeAndrea, and Does.

Count VI: failure to intervene under § 1983 against individual defendants.

Count VII: civil conspiracy under § 1983 against Defendants Colasardo and Nicholas.

Count VIII: municipal liability under § 1983 against Defendant City of Hazleton.

Count IX: fourteenth amendment equal protection under § 1983 (all defendants).

Count X: denial of equal rights under § 1981 (all defendants).

Count XI: conspiracy to interfere with civil rights under § 1985 (all defendants).

Count XII: failure to prevent actions taken under §§ 1985-1986, under §§ 1985-1986, (all defendants).

Count XIII: violation of state constitution against individual defendants.

Counts XIV and XV: assault and battery (Count XIV) and trespass, false arrest, and illegal imprisonment (Count XV) under state law against Defendants Colasardo, Nicholas, City, and Does.

Count XVI: state law civil conspiracy against Defendants Colasardo and Nicholas.

Counts XVII and XVIII: state law wrongful death and a survival action (all defendants).

On March 16, 2015, Defendants filed a Motion to Dismiss for failure to state a claim pursuant to FRCP 12(b)(6) (Doc. 28) and a Brief in Support (Doc. 29).  On March 17, Defendants filed an Amended Brief in Support (Doc. 30).  Any references to the "Brief in Support" herein refer to the Amended Brief in Support (Doc. 30).  Defendants seek to dismiss Count VI (§ 1983 failure to intervene) as to Defendants Yannuzzi and DeAndrea, Count X (denial of equal rights under § 1981), Count XI (§ 1985 conspiracy), Count XII (§ 1985-1986 equal protection), and Count XVI (state law conspiracy).

On March 27, 2015, Plaintiff filed a Brief in Opposition (Doc. 31).  This matter is fully briefed and ripe for disposition.

**II. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering such a motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,(2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a

reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n. 13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants assert that Plaintiff's Complaint fails to state a claim upon which relief can be granted with respect to five of eighteen counts, at least in part. Taking all facts in a light most favorable to Plaintiff, and resolving all inferences in her favor, I examine whether she has alleged sufficient facts to plausibly state a claim. I address the counts in the same order as Defendants in their Brief in Support of the Motion to Dismiss (Doc. 30).

**A. Count VI**

Plaintiff asserts that all individual defendants are liable for failing to intervene to prevent the violations of Decedent's constitutionally-protected rights, pursuant to 42 U.S.C. § 1983. Defendants seek to dismiss this claim as to Defendants Yannuzzi and DeAndrea, because "Plaintiff concedes that Defendants Yanuzzi and De Andrea [sic] are 'supervisory' and 'policy making' defendants." (Doc. 30, 5.) Defendant Yannuzzi is the mayor and Defendant DeAndrea is the police chief of Hazleton.

11

Defendants' Motion to Dismiss does not challenge that the Complaint states a claim that Defendants Colasardo and Nicholas are liable for failure to intervene. "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). An officer is liable under § 1983 only if there is a "realistic and reasonable opportunity to intervene." *Id.* at 650-51.

With respect to Count VI, Failure to Intervene, the instant motion only seeks dismissal as to Defendants Yannuzzi and DeAndrea. In their prior Motion to Dismiss (Doc. 19), Defendants sought to dismiss this count, and in my prior Memorandum and Order (Docs. 25, 26), I denied it. I will *deny* Defendants' Motion to Dismiss (Doc. 28) on the same grounds. Defendants' instant Motion to Dismiss and Brief in Support (Doc. 30) essentially reasserts the same grounds as in their prior Motion to Dismiss: Defendants cannot be liable because they were not present for the allegedly unconstitutional actions, and they cannot be liable under a theory of *respondeat superior.*

While Defendants Yannuzzi and DeAndrea were not present when the alleged failure to intervene took place, they can be held liable for the conduct of Officers Colasardo and Nicholas, their inferiors, under a theory of supervisory/policy-maker liability.

Defendants are correct that municipalities and their employees cannot be held liable under § 1983 pursuant to a theory of *respondeat superior. Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). However, municipalities and supervisory employees "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Pursuant to *Monell*, a failure to train police officers can cause a municipality to be liable under § 1983 "where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). The United States Supreme Court has explained:

> [I]n light of the duties assigned to specific officers or employees the need for more or

>different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id*. at 390.

Plaintiff alleges that Defendants Yannuzzi and DeAndrea are liable for the failure of the police department and the city to train police on the proper ways to intervene when a fellow officer is violating the rights of others. This is a common situation that officers face, and is a situation in which violations of citizens' constitutional rights are likely to occur. Furthermore, many citizens had made complaints to the city and the department about the conduct of police officers in these situations prior to the event at issue here. Many citizens had specifically complained about the excessive use of force in a racially-discriminatory manner. Plaintiff asserts that the failure to train police officers to respect the constitutional rights of citizens in situations that police officers very frequently face, and the decision to ignore complaints about their practices, amounts to deliberate indifference.

Taking all of the Plaintiff's factual assertions as true, and resolving all inferences in her favor, she has stated a claim for which relief can be granted. In *Monell,* the Supreme Court made clear that officials may be held liable, and sued, in such suits:

>Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are "persons" under § 1983 in those cases in which, as here, a local government would be suable in its own name.

*Monell*, 436 U.S. at 691 (1978).

Thus, in asserting that these claims against Yannuzzi and DeAndrea should be dismissed merely because they did not personally physically participate in the alleged constitutional violations, Defendants have not shown that the claims should be dismissed, and the motion will be denied.

13

**B. Counts XI, XII**

Defendants seek dismissal of Count XI, which alleges conspiracy to interfere with civil rights pursuant to § 1985 against all defendants. Defendants sought dismissal of this count in their first Motion to Dismiss (Doc. 19). I granted it, dismissing the claim without prejudice, with leave to amend. (Doc. 26.) In her Second Amended Complaint (Doc. 27), Plaintiff re-asserts this count, and adds additional factual allegations.

Under § 1985(3), it is illegal to conspire for the purpose of depriving any person of the equal protection or rights of the law. To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997), *see also Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).

In my prior Memorandum and Order (Docs. 25, 26), I found that Plaintiff sufficiently plead that a conspiracy existed between Officers Colasardo and Nicholas, there was an act in furtherance of this conspiracy, and an injury and deprivation of rights. However, I found that Plaintiff had not plausibly claimed that this deprivation was motivated by racial animus.

In the Second Amended Complaint (Doc. 28), Plaintiff addresses the prior complaint's deficiencies, and states sufficient facts, resolving all inferences in her favor, to plausibly claim that the deprivation of rights was racially motivated. Plaintiff alleges that Defendants Colasardo and Nicholas had made a series of racially discriminatory comments to Plaintiff and Decedent, and family members. (*Id.* at ¶ 248.) Defendants Colasardo and Nicholas repeatedly used racial slurs toward Decedent's family members, both before and during the underlying events. (*Id.* at ¶¶ 248b-c.) Decedent and his family were Latino, and Defendants Colasardo and Nicholas told Plaintiff to "go back to where you came from," and "you are ruining our town." (*Id.* at ¶ 248c.) On the day of the shooting, Defendant Nicholas called Decedent's mother a "fucking immigrant" as he assaulted her. (*Id.* at ¶ 248d.) Additionally,

as the officers cleared family members out of Decedent's home after shooting him, they again called his family "fucking immigrants," and told them to "go the fuck downstairs before I shoot you, you fucking immigrants." (*Id.* at ¶ 248d.) Defendants Colasardo and Nicholas, who were both Caucasian, had a history of engagement with Decedent's family. These factual allegations are sufficient to state a plausible claim that the violation of Decedent's rights was motivated by racial animus. Thus, with respect to Defendants Colasardo and Nicholas, Defendants' Motion to Dismiss will be *denied.*

Plaintiff also asserts that Defendants Hazleton, Yannuzzi and DeAndrea are liable for the above actions under a theory of municipal liability, and policymaker and supervisory liability. Defendants do not address this in their motion to dismiss, and this claim will be permitted to proceed.

Defendants also seek dismissal of Count XII, which alleges failure to prevent actions taken under § 1985 against all defendants. Defendants make no argument addressing why Count XII should be dismissed, presumably it is predicated on the dismissal of Count XI. Thus, Defendants' motion to dismiss Count XII will be *denied.*

**C. Count X**

Defendants seek dismissal in entirety of Count X, which alleges denial of equal rights under the law pursuant to 42 U.S.C. § 1981, against all Defendants. Defendants argue that this claim should be dismissed because § 1981 only protects certain specified rights against unequal protection on the basis of race.

42 U.S.C., § 1981, states, in pertinent part:

(a) Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiff agrees that § 1981 protects only against certain specified rights, but asserts that it includes racially-motivated police misconduct, including the circumstances upon which

this action is based. The Court of Appeals for the Third Circuit has construed § 1981 broadly, holding that it applies in situations such as the instant one, in which it is alleged that police officers denied constitutional rights on the basis of race. *Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir. 1977) (finding this to be part of the statute's protection of "the right 'to full and equal benefit of all laws and proceedings for the security of persons and property' and with the prohibition against unequal 'punishment, pains (and) penalties.'") Based on the foregoing, Defendants' Motion to Dismiss this count will be *denied.*

## D. Count XVI

In the prior Motion to Dismiss (Doc. 19), Defendants sought dismissal of Count XVI, which alleged a state law civil conspiracy claim against Defendants Colasardo, Nicholas, City, and Does. In my January 30, 2015 order, I granted this relief as to Defendant City and Does, but denied it as to Defendants Colasardo and Nicholas (Doc. 26). The Second Amended Complaint (Doc. 27) contains the same claim, but only against Defendants Colasardo and Nicholas. (Doc. 27, ¶¶ 272-4.) Defendants again seek dismissal.

I will *deny* Defendants' motion to dismiss this claim, as the reasoning in my prior Memorandum (Doc. 25) still holds true. Defendants do not assert any new reasons why this claim should be dismissed. (Doc. 30, 12-13.) They merely recite the standard I included in my memorandum, and argue that Plaintiff does not state a claim. As I found in my prior Memorandum and Order, Plaintiff has plead sufficient facts to plausibly state a claim of civil conspiracy as to Defendants Colasardo and Nicholas. Defendants' Motion to Dismiss Count XVI will be *denied.*

## IV. Conclusion

For the above reasons, Defendants' Motion to Dismiss (Doc. 28) will be *denied.* An appropriate order follows.

| July 15, 2015 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |